WILLIAM H. McNEIL *vs.* ARNOLD KENDALL & another.
JAMES B. AMES *vs.* SAME.

Suffolk. Nov. 14, 1877. — Jan. 21, 1880. COLT & AMES, JJ., absent.

Where a lessee of a lot of land makes a lease, for the remainder of his term, of a building standing on a portion of the leasehold premises, and by the terms of the lease grants easements, appurtenant to the building, of light and air, and of passing and repassing, over other portions of the leasehold premises, in common with him and those claiming under him, such lease is an underlease and not an assignment of his whole term in a portion of the leasehold premises.

The owner of two parcels of land in a city, one on S. Street, and the other on L. Street, bounded in part by the rear line of the first parcel, demised the two parcels, on the same day, by separate indentures of lease, each for the term of twenty years, to A. These indentures were duly recorded. The city then took, by the right of eminent domain, a portion of each parcel. A. then took down the buildings on each parcel, as he had a right to do under the leases, and erected a warehouse fronting on S. Street, covering all the land included in the first lease, except that taken by the city, and also covering a

portion of the land included in the second lease. He also erected a building fronting on L. Street, which covered a portion of the land included in the second lease. An area was left open between the two buildings, and a passageway constructed, leading from L. Street, under the building fronting thereon, across the area to a door in the rear of the building on S. Street. Each building had windows opening into the area, and the building on S. Street, which was higher than the other, had windows overlooking it. Subsequently A., by an indenture duly recorded and in the form of a lease, demised to K. for the remainder of the term, "the warehouse on S. Street," giving no other description of the premises, and making no allusion to the area or the passageway, except that the instrument contained a provision that the building on L. Street should not be carried higher so as to obstruct the light, and that the occupant of the building on L. Street should have a right through the passageway. Before giving this instrument, and while the original leases had more than seven years to run, A. demised to B., for the remainder of the term, by an instrument not recorded, the building on L. Street, expressly excluding the passageway. Subsequently, the right, title and interest of A. under the leases to him were duly sold on an execution against him. The rights under the first lease were conveyed to M., and those under the second lease to a third person, who conveyed them to M. *Held*, in an action by M., after an entry upon the land, against K., for the rent subsequently accruing under the indenture from A. to K., that this instrument was an underlease and not an assignment; and that the action could be maintained.

ENDICOTT, J.   In the first of these cases McNeil, the plaintiff, as assignee under a levy of sale of the leasehold estates of Samuel T. Ames, created under certain indentures from Lucy Ann Harris, seeks to recover rent from the defendants, to whom Samuel T. Ames had leased, prior to the sale, a portion of the premises included in the indentures.

In the second case James B. Ames, the plaintiff, contends that the lease from Samuel T. Ames to the defendants operated in law as an assignment of his entire term in the premises described therein, and not as an underlease; and that there was no estate or reversion in those premises remaining in Samuel T. Ames which could be levied upon and sold. Under an assignment, therefore, after the levy and sale, made to him by Samuel T. Ames of the rent reserved in the defendant's lease, James B. Ames seeks to recover the same from the defendants.

The cases were argued together as one case, and will be so considered by the court in determining which plaintiff is entitled to recover the rent from the defendants.

It appears from the record in these cases, that Lucy Ann Harris was, in 1866, the owner in fee of two estates in Boston, one on Summer Street, and the other on Lincoln Street.   By an

indenture, dated in September of that year, she demised to Samuel T. Ames, for the term of twenty years from January 1, 1867, the estate on Summer Street; and, at the same time, by another indenture, she demised to him for the same term the estate on Lincoln Street, which was bounded in part by the rear line of the estate on Summer Street. It is unnecessary to recite these indentures at length; with the exception of the amount of rent reserved, and certain provisions in regard to the removal and erection of buildings, they do not differ materially. Under the first named, the lessee was bound by his covenants to take down the building standing on the estate on Summer Street, and to erect thereon a good and substantial warehouse, of not less than a certain value, and to keep the same in repair, and insured for the benefit of the lessor. Under the second, he had the right to take down the buildings on the estate on Lincoln Street, and, if he did so, he was also required to build thereon a good and substantial warehouse. It was stipulated in this indenture that the lessee should keep the buildings standing thereon, or such as he might erect in their place, in good repair. Under these indentures, which were duly recorded, Samuel T. Ames went into possession of the whole estate. The city of Boston, in the exercise of the right of eminent domain, took a portion of each lot for the purpose of widening the street on which it fronted, and laid out the same as a highway before any of the instruments were executed which are the subject of this controversy.

Under the powers and in accordance with the covenants contained in these indentures, Samuel T. Ames took down all the old buildings on the demised premises, and, having full power and control over the same, treated them as one estate, and erected two warehouses thereon, obliterating the old lines of division. One warehouse was built on Summer Street, which covered all the land included in the first indenture, excepting that which was taken for the highway, and also covered a portion of the rear of the land demised by the second indenture. It was constructed of brick and stone and was four stories high. The other was built on Lincoln Street, as widened, of brick and stone, two stories high, and covered a portion of the land described in the second indenture. A space or area was left open

between the two buildings, and a passageway was constructed five feet wide and planked, leading from Lincoln Street on the southerly side of the premises, in a direct line, under the last-named building, and across the area, to a door in the rear part of the building fronting on Summer Street. Each building had windows opening upon the area, and the building on Summer Street had windows overlooking the building on Lincoln Street. It is stated in the defendants' bill of exceptions, in the first case, that this passageway was left, constructed and designed for the use of the building on Summer Street, in connection with the door in the rear of the same, and was the only means of access from the highway to the area, and also to the door fronting thereon in the rear of the building on Lincoln Street.

In July 1873, Samuel T. Ames, by an indenture duly recorded, leased to the defendants for the remainder of his term "the store and warehouse Nos. 119 and 121 on Summer Street in Boston;" giving no other description of the premises, and making no allusion to the area or the passageway in the rear, except in a clause which recites that " it is understood that the rear building on Lincoln Street shall not be carried up any higher, so as to obstruct the light during the continuance of this lease. Also agreed that the party occupying the small building on Lincoln Street shall have a right through the passageway." This lease is in the common form, and contains the provisions, that the lessor shall rebuild in case of fire, and remit during the time a fair proportion of rent; that the lessees shall pay the rent reserved and taxes, and deliver up the premises at the end of the term, and not make or suffer any waste; and that the lessor may enter to view and make improvements, and may expel the lessees if they fail to pay rent and taxes, or make or suffer any strip or waste.

Whatever may be the legal effect of this indenture, it is evident that the parties contemplated only a sub-lease of a portion of the whole estate, as improved by Samuel T. Ames.

Before giving this lease, Samuel T. Ames, in May 1873, demised, by an indenture to H. P. Bambauer for the remainder of his term, " the two-story building, No. 2 Lincoln Street, in Boston," giving no other description, and not alluding to the area, but referring to the passageway in these words: " Passageway

partly under the building is not included in this lease." This lease was surrendered in August, 1873, and at the same time Samuel T. Ames executed another lease of the same premises for the same term to Jacob Bambauer, which contains the same provision in regard to the passageway. Neither of these leases was ever recorded. The last was assigned by Samuel T. Ames to the plaintiff, McNeil, after he had purchased the leasehold interest of Ames in the Lincoln Street estate, which was sold at the sheriff's sale.

By neither of these indentures did Samuel T. Ames convey the land included within the area or the passageway. It is clearly to be implied from the language of the lease to the defendants, taken in connection with the fact that the passageway was then laid out from Lincoln Street to the door in the rear of the defendants' premises, that a right in that passageway passed by the indenture to the defendants in common with Samuel T. Ames and the occupants of the other building. It is also clear that the defendants acquired an easement for the light afforded to their building by the area, under the provision that the building on Lincoln Street should not be " carried up higher so as to obstruct the light during the continuance of this lease." These easements thus granted to the defendants, in the land not conveyed in either indenture and in the land occupied by the other building, constituted a portion of the premises demised to the defendants to be enjoyed in common with Samuel T. Ames, and such other persons as might occupy the building on Lincoln Street.

It was in this condition of the property, that all the right, title and interest of Samuel T. Ames in the two estates, held by him under the two indentures from Lucy Ann Harris, were seized and sold, at a sheriff's sale in November 1875, upon an execution issued against him in favor of the Lancaster National Bank. The plaintiff, McNeil, purchased the leasehold estate fronting on Summer Street, which was duly conveyed to him by the sheriff. One E. K. Harris purchased the other, and, having received a deed of the same from the sheriff, conveyed his interest therein to McNeil, who thus became assignee in law of the entire interest of Samuel T. Ames in the whole estate, to the same extent as if Ames had himself transferred all his

leasehold interests therein. *Sanders* v. *Partridge*, 108 Mass. 556, 558. It was not contended at the argument that these sales were in any respect irregular or invalid.

There is no question that some portion of the leasehold estates of Samuel T. Ames in the premises passed to McNeil by the levy and sale. The lease to Jacob Bambauer was not recorded, and cannot be treated as valid against the levy; and the subsequent assignment of it to McNeil cannot in any way operate to his prejudice. That portion of the premises therefore passed to him, as well as the area and passageway, subject to the defendants' easements therein; together with such interests and rights of reversion as Samuel T. Ames had in the strips of land taken for highway. Whether the remaining premises passed to him depends upon the question, whether the defendants hold, as assignees of a part of the premises for the whole term, or as sublessees.

Before dealing with that question, it is proper to allude to some difficulties which might have arisen on this state of facts. In improving the property, Samuel T. Ames disregarded the lines of division, as set out in the two indentures from Lucy Ann Harris, and erected the building on Summer Street partly on land included in the first, and partly on land included in the second indenture; and, in leasing this building to the defendants, he attached to the whole estate thus conveyed certain easements in the other land included in the second indenture. In selling his leasehold estates under both indentures, of course they must be sold separately, and if they had been bought and were now held by different persons, each purchaser would have acquired only a part of the building occupied by the defendants; and a very serious question would have arisen, in regard to their respective rights, as against the defendants, who hold the whole building, and the easements connected therewith, as one estate. But this question is not before us, for McNeil holds whatever passed by the sale of both. Nor is it denied that Samuel T. Ames had the right thus to disregard the old lines of division in improving the property, as one estate; and all parties claim interests under him in the entire premises occupied by the defendants. As between them, therefore, we must assume that it is one estate, irrespective of all lines of division and of the

fact that Samuel T. Ames obtained his interest by separate and distinct indentures; and the cases have been argued before us on this assumption.

It is unnecessary to cite authorities to the proposition, that to constitute an assignment by a lessee of the whole, or of a specific part, of his leasehold estate, the entire interest of the lessee in all the premises included in the assignment must pass to the assignee. Even if the instrument may be in form a sub-lease, yet if it conveys the whole estate it will operate as an assignment. In deciding, therefore, whether this lease to the defendants is in law an assignment, we must ascertain from all its provisions, as applied to the subject-matter, whether Samuel T. Ames conveyed his entire term and interest in the premises, which the defendants have the right to occupy and enjoy under their lease from him.

What then passed to the defendants from Samuel T. Ames? The land under the building, the building itself, the right to use the passageway in the rear extending to Lincoln Street, the right to enjoy the light in the area, secured by the provision that the space above the two-story building on Lincoln Street shall remain open and unobstructed. These were not mere personal rights, but easements appurtenant to and a part of the premises conveyed, and necessary for the complete enjoyment of that portion which opened on the area. *Dennis* v. *Wilson*, 107 Mass. 591. *Peck* v. *Conway*, 119 Mass. 546. And if Samuel T. Ames or those claiming under him had raised the building on Lincoln Street higher than two stories, the defendants would have been entitled to relief in equity to enforce the restriction. *Parker* v. *Nightingale*, 6 Allen, 341. The defendants thus acquired the whole interest in the warehouse on Summer Street and the land on which it stood, and subordinate and limited interests in all the other land between the warehouse and Lincoln Street. These cannot be separated or divided, but form one estate, carved out of the whole leasehold estate of Samuel T. Ames, acquired from Lucy Ann Harris.

It is plain, therefore, that Samuel T. Ames, while he conveyed to the defendants his whole term for years, did not convey his whole interest in the premises, which the defendants had the right to occupy and enjoy under their lease; but retained in

himself all the land, not covered by the warehouse on Summer Street, subject to the easements granted to the defendants. The interest which he conveyed to the defendants was a portion of the entire estate, and not his whole estate in a portion of the same. "For there is a diversity between the whole estate in part, and part of the estate in the whole, or of any part." Co. Lit. 385 *a*. Shep. Touchst. 199.

While this case differs in many of its features from that of *Patten* v. *Deshon*, 1 Gray, 325, yet the point there determined is decisive of this, independently of the considerations stated above. In that case, one Walker, a lessee for years, had given a lease in a portion of the premises by metes and bounds, for his entire term, to the defendant, and afterwards assigned all his right, title and interest in his lease to the plaintiff; and it was held that the plaintiff could recover from the defendant the rent accruing upon his lease. Chief Justice Shaw in delivering the judgment said : " It would be too narrow a construction to hold that this was only an assignment of the instrument or document; it means all the right, title and interest, which he holds, or has title to hold, under the instrument. It clearly embraced the transfer of all right to the use and enjoyment, for the residue of the term, of all that part of the leased premises which had not been underlet to Deshon. Had the sub-lease to Deshon been surrendered, or forfeited by non-payment of rent, the assignment would have passed to the assignee the right to use and enjoy that part of the premises let to Deshon, for the residue of the term. It was therefore a substantial interest intended to be assigned." " And it is to be considered, that Patten, the plaintiff, by force of that assignment of Walker to him, for the whole term, had become assignee of the lessee, and as such liable to the action of the original lessor, for the entire rent. In order to enable him to meet that obligation, equity required that he should have the entire benefit of the term, including not only the use and occupation of the part not underlet, but also the rent accruing from sub-lessees, of all such parts of the premises as were held by them ; and therefore it must have been the intention of the parties, in the assignment, that the assignee should take upon himself the burden of paying the whole rent, and be entitled to the benefit of the whole of the leased premises ; and that Walker, the original

lessee and assignor, being relieved from the payment of any rent to the original lessor, could have no right to receive rent of a sub-lessee."

In the case at bar, McNeil acquired under the levy and sale all the right, title and interest of Samuel T. Ames in a considerable portion of the leasehold estate not let to the defendants. By the terms of the lease to the defendants, Samuel T. Ames had the right to reënter if the defendants failed to pay rent, or committed strip or waste, and this right passed to McNeil under the conveyance from the sheriff of all the right, title and interest of Samuel T. Ames in the leasehold estates.

We are not aware that the decision in *Patten* v. *Deshon* has ever been judicially questioned; nor has any case been called to our attention, in which, upon the same state of facts, a different rule has been declared. It has been cited with approval in numerous cases in our own reports; it has been the law in Massachusetts for more than twenty years, and lays down a just and equitable rule, not inconsistent with the established principles of law. *Buffum* v. *Deane*, 4 Gray, 385, 393. *Hunt* v. *Thompson*, 2 Allen, 341. *Way* v. *Reed*, 6 Allen, 364. *Sanders* v. *Partridge*, 108 Mass. 558, 560. *McNeil* v. *Ames*, 120 Mass. 481. *Porter* v. *Merrill*, 124 Mass. 534. *Farrington* v. *Kimball*, 126 Mass. 313. See also *Shumway* v. *Collins*, 6 Gray, 227.

The plaintiff, McNeil, entered upon the premises after the sale, notified Lucy Ann Harris of his assignment, and that he would pay rent to her; and also gave notice to the defendants that they must pay rent to him; and we are of opinion, for the reasons stated, that he is entitled to recover. It therefore becomes unnecessary to consider the other questions so ably argued at the bar, or to review the numerous cases cited by the counsel. By the terms of the report, in the first case the exceptions must be overruled; and in the second case the entry must be

*Plaintiff nonsuit.*

*A. A. Ranney*, for the plaintiff in the first case, and for the defendants in the second case.

*J. B. Ames*, *pro se*, and for the defendants in the first case.