230 S.W.2d 770 (1950)
FIRST TRUST CO.
v.
DOWNS.
No. 21312.
Kansas City Court of Appeals. Missouri.
May 8, 1950.
*771 Alva F. Lindsay, John W. Mitchell, St. Joseph, for appellant.
Chas. H. Mayer, St. Joseph, for respondent.
BROADDUS, Judge.
This is an action for a declaratory judgment. The facts are not in dispute.
On the 17th day of June, 1922, Lee C. Broom became the lessee of the west forty feet of Lots Seven and Eight, Block Fifty, in the City of St. Joseph, Missouri, for a term ending the last day of June, 1972, and by the lease he was expressly authorized to sublet or to assign the lease. Under the terms of said lease Broom was to build on said lots a hotel building, and said building was erected on said premises, where it now remains, having been ever since its erection operated as a hotel; said hotel building has since its erection been known as 416 and 418 Francis Street, St. Joseph, Missouri.
*772 Long prior to the first day of August, 1936, said Broom was the owner of the lot and the two-story building thereon, known as 420 Francis Street, St. Joseph, Missouri, situated east of and adjoining said hotel building, and on the first floor of said building known as 420 Francis Street, a restaurant was operated by said Broom. On the first day of August, 1936, the said Lee C. Broom and Sylvia Broom, his wife, entered into a written lease with William T. Wheeler of St. Joseph, Missouri. By the terms of said lease the lessors leased and rented all the premises of which Lee C. Broom was the lessee known as 416 and 418 Francis Street, and also the lot and two-story building thereon adjoining said premises on the east, the latter building being known as 420 Francis Street, for a term of fifteen years beginning on the 1st day of August, 1936, and ending on the 31st day of July, 1951, for a monthly rental during the whole term of the lease of $833.33.
By the terms of the last mentioned lease Wheeler was granted an option "at the expiration of said lease to extend the same for a period of ten years from the 1st day of August, 1951, at a rental of $833.33 per month, all other terms and conditions of this lease to remain in effect," provided that, six months prior to the expiration of the term fixed by said lease, the said lessee should give written notice of his intention to exercise said option.
Said lease expressly provided that Wheeler should have no right to sublet or assign said premises, or any part thereof, or to assign said lease, or any interest therein, except with the consent of lessors given by written instrument executed by them.
On the 22nd day of October, 1942, William T. Wheeler, George E. Downs, Lee C. Broom and Sylvia Broom, his wife, entered into an instrument of writing, which they designated as "sublease", wherein Wheeler was designated as first party, Downs as second party, and the Brooms as third parties, in which is the following recitation: "Whereas, the third parties heretofore made, signed, acknowledged and delivered to the first party a certain agreement of lease, dated the 1st day of August, 1936" (covering all of the property leased by Brooms to Wheeler), "for a term of fifteen years beginning on the first day of August, 1936 and ending on the 31st day of July, 1951," which lease was recorded, and a copy marked "Exhibit A" was attached to the sublease.
It is also recited in said instrument of writing that "Whereas, the first party desires to sublease a portion of the aforesaid demised premises and the second party is willing to accept a sublease thereof * * * the first party hereby leases and sublets to the second party, and the second party hereby hires from the first party the west forty feet (40) of Lots seven (7) and eight (8), Block fifty (50), Original Town, now City of St. Joseph, Buchanan County, Missouri, and the hotel building and improvements thereon known as Numbers 416 and 418 Francis Street, St. Joseph, Missouri, and also the second floor (with the exception of the rear south store room thereof) of the two-story brick building adjoining the above described property on the east and known as number 420 Francis Street in the City of St. Joseph, Missouri, for all the unexpired residue of said term of fifteen (15) years provided in the said agreement of lease between the third parties and the first party, that is to say, for a term beginning on the 22nd day of October, 1942, at 6 o'clock p. m., and ending on the 31st day of July, 1951."
By the terms of said sublease Downs was to pay to Wheeler, "or to his order, the sum of eight hundred and thirty-three and 33/100 dollars ($833.33) per month for the portion of said term beginning on the 22nd day of October, 1942, and ending on the 31st day of December, 1946," and thereafter the said second party was to pay the first party, "or to his order, the sum of seven hundred and thirty-three and 33/100 dollars ($733.33) per month for the portion of said term beginning on January 1, 1947 and ending on the 31st day of July, 1951."
By paragraph 6 of said sublease it was recited that the storage room located on the second floor of the two-story brick building adjoining the hotel building was not leased by the first party to the second party, "but that said store room is reserved *773 by the first party for the use of the first party's employees as a dressing and rest room, and that said second party will, during the whole term of this lease, permit the first party's employees to have ingress to and egress from said storage room through the second party's hotel building through and by means of hallways, stairways, and lobbies of the premises hereby demised."
By paragraph 7 it was agreed "that the doorway located on the ground floor of the hotel building known as Number 416 and 418 Francis Street, St. Joseph, Missouri, and on the east side thereof and in close proximity to Francis Street, which said doorway enters into the first floor of the two story building adjoining the said hotel building on the east (which said first floor is occupied and used by the first party for restaurant purposes), shall at all times during the whole term of this lease, remain open during first party's business hours for the purpose of affording ingress to the first party's restaurant from the second party's hotel building and egress from the first party's restaurant to the second party's hotel building."
By paragraph 8 it was agreed that the first party "reserves the right during the whole period of this lease to maintain, on the rear of that part of the demised premises on which the said hotel building is situated, the water tower, and the stairway and entrance to the rear part of first party's kitchen, in the same manner as the same exists at the time of the execution of this sublease."
By paragraph 11 it was provided that the second party should have no right to sublet or assign said demised premises, or any part thereof, or to assign the sublease, or any interest he might have therein, except with the prior written consent of the first party and the third parties.
By paragraph 12 it was provided that "except as herein otherwise expressly provided, all the terms, covenants, conditions and provisos in the aforementioned agreement of lease, marked `Exhibit A', (from Broom to Wheeler) are hereby incorporated in, and made a part of, this indenture of sublease; and such rights and obligations as are contained in said `Exhibit A' are hereby imposed upon the respective parties hereto, the first party herein being substituted for the Lessors in said agreement of lease, and the second party herein being substituted for the Lessee in said agreement of lease; provided, however, that the first party herein shall not be liable for any defaults by his landlords, Lee C. Broom and Sylvia Broom, his wife."
Subsection (a) of paragraph 13 of said sublease contains the consent of Lee C. Broom and his wife, Sylvia Broom, and is as follows: "(a) Third parties do hereby consent that the said First party may sublease to the Second party the premises herein demised by this sublease for the whole remaining term of said original lease between the Third Parties (Brooms) and the first party, (Wheeler) marked `Exhibit A', and incorporated in, and made a part of this indenture of sublease, provided that this consent shall not authorize any further underletting, or parting wholly or partially with the possession of said demised premises, or any part thereof, or prejudice or affect any of the covenants, conditions or provisions of said lease, marked `Exhibit A', contained, except to the extent herein expressed."
It was admitted that Lee C. Broom died intestate prior to July, 1946, leaving surviving him a widow, Elizabeth Broom, a son Carl L. Broom, and leaving surviving him no other child or children of a deceased child; it was further admitted that under the Trust Agreement executed on the 3rd day of July, 1946, by Elizabeth Broom, widow of Lee Broom, deceased, and Carl L. Broom, son of Lee Broom, deceased, and Pauline Broom, wife of Carl L. Broom, and The First Trust Company of St. Joseph, Missouri (plaintiff), that said The First Trust Company, as trustee, had succeeded to the title of all of the property mentioned herein. Under said Trust Agreement it was the duty of the trustee to hold, manage, invest and reinvest any and all of the property conveyed, collect and receive the income thereof, and pay over the income and eventually the corpus of said property as directed by the Trust Agreement. The trustee was authorized *774 and empowered to sell all or any part of said property conveyed, whether said property be treated as real or personal property, and to lease any and all of said property and fix the duration of the term.
Under the foregoing sublease from Wheeler to Downs, it is claimed by defendant, Downs, that he has the right, and that he may desire, six months before the expiration of the term fixed in said sublease, to exercise the option given in the lease from the Brooms to Wheeler, to extend the term of the lease between Wheeler and Downs for a term of ten years after the 31st day of July, 1951. This claim is denied by plaintiff, who brought this suit for the purpose of having the court declare the rights of the parties under said sublease, with especial reference as to the right of defendant, Downs, to exercise the option given to Wheeler in the lease to him from the Brooms.
The court found that the claim of Downs was based upon said sublease from Wheeler to Downs, and that said claim possessed sufficient color of right to render it impossible for plaintiff to sell or lease said premises without a judicial determination or declaration as to the rights of plaintiff and defendant; that without a judicial determination of said claim, plaintiff could not give a purchaser or a lessee assurance as to whether said purchaser or lessee could take over possession of said premises on the 1st day of August, 1951, or whether said purchaser or lessee could not get possession until the first day of August, 1961; and that said claim, until judicially determined, would work irreparable injury and damage to said property and to plaintiff and to the persons for whose benefit plaintiff had been created trustee. The judgment was that the sublease gave Downs no right to extend his lease for any term beyond July 31st, 1951. From that judgment defendant, Downs, has appealed.
The question for decision here is whether or not defendant, Downs, has a right under the terms of his "sublease" with Wheeler to exercise the option to extend his term for a period of ten years as provided for in the lease from the Brooms to Wheeler. The solution of this question depends upon whether or not the instrument is an assignment or a sublease. The benefit of a clause in a lease conferring the option to extend or renew, passes by assignment of the lease and the assignee acquires the rights of the lessee, although there is no express reference in the assignment to the covenant of renewal. On the other hand, a sublessee is not entitled to take advantage of a right of renewal given to the original lessee, but his rights to a renewal or extension depends on the covenant or agreement in his lease. 51 C.J.S., Landlord and Tenant, § 58, pages 602, 603; 127 A.L.R. 949.
In Weigle v. Rogers, 202 Mo.App. 520, at loc. cit. 522-523, 213 S.W. 501, at loc. cit 502, it is said: "There is a distinction between a 'sublease' and an `assignment.' * * * It appears that in a sublease proper the sublessor retains some right or interest in the premises subleased, while in an assignment proper the assignor parts with all his interest of whatever kind or character. St. Joseph & St. L. Ry. Co. v. St. Louis, I. M. & S. Ry. Co., 135 Mo. [173], loc. cit. 192, 36 S.W. 602, 33 L.R.A.607."
As many of the cases say, the distinction between an assignment and a sublease is clear, though not always easy of application.
In the sublease from Wheeler to Downs, Wheeler retained one of the upstairs rooms in the building known as 420 Francis Street. Wheeler reserved, during the whole term of the sublease, the right to use the stairs, hallways and lobby of the demised hotel building in order that his employees might use said room as a dressing and rest room.
Wheeler also reserved, during the whole term of the sublease, the right to keep open a certain door in the hotel demised to Downs, as a passageway from such hotel into 420 Francis Street and as a passageway from 420 Francis Street into said hotel.
He also reserved, during the whole term of said sublease, the right to maintain a water tower at the rear of the hotel and on the demised property.
*775 He also retained the right, during the whole term of said sublease, to maintain and use a stairway at the rear of the hotel building and on the demised property, as an entrance and an exit into the kitchen at the rear of the building on 420 Francis Street.
Plainly these were reservations for the benefit of the dominant tenement, and, therefore, were easements running with the land.
A leading case on this question seems to be McNeil v. Kendall, 128 Mass. 245, 35 Am.Rep. 373. In that case it was sought to have what purported to be a sublease construed to be an assignment. In passing on that very question and in holding the indenture to be a sublease and not an assignment, the court said, 128 Mass. loc. cit. 251, 35 Am.Rep. 373: "It is unnecessary to cite authorities to the proposition, that to constitute an assignment by a lessee of the whole, or of a specific part, of his leasehold estate, the entire interest of the lessee in all the premises included in the assignment must pass to the assignee. Even if the instrument may be in form of a sublease, yet if it conveys the whole estate it will operate as an assignment. In deciding, therefore, whether this lease to the defendants is in law an assignment, we must ascertain from all its provisions, as applied to the subject matter, whether Samuel T. Ames conveyed his entire term and interest in the premises, which the defendants have the right to occupy and enjoy under their lease from him."
In that case the grantor had reserved the right to light and air in a higher building adjoining the two story building which was sublet, and the grantor had also reserved a passageway over a part of the property on which the two story building was situated. The court, in holding that the indenture was a sublease and not an assignment, said, 128 Mass. loc. cit. 251, 35 Am.Rep. 373: "It is plain, therefore, that Samuel T. Ames, while he conveyed to the defendants his whole term for years, did not convey his whole interest in the premises, which the defendants had the right to occupy and enjoy under their lease; but retained in himself all the land, not covered by the warehouse on Summer Street, subject to the easements granted to the defendants. The interest which he conveyed to the defendants was a portion of the entire estate, and not his whole estate in a portion of the same."
An easement, according to the authorities, is an interest or estate in real property. Kuhlman v. Stewart, 282 Mo. 108, 221 S.W. 31; Huyck v. Andrews, 113 N.Y. 81, 20 N.E. 581, 3 L.R.A. 789, 10 Am.St. Rep. 432.
In view of the above, we are of the opinion that the trial court's holding "that by said sublease between Wheeler and Downs (defendant) Wheeler's entire interest in the part of the premises rented and demised to Downs was not transferred to Downs", was correct.
Confronted by the rule that an easement is an interest in real property, defendant undertakes to avoid its force by contending that "the rights contracted to Wheeler by Downs, pertaining to Wheeler's use of hotel property were mere licenses or privileges to Wheeler and to Wheeler's restaurant. They did not constitute easements and were not an interest in real estate."
The rights reserved by Wheeler were not "mere licenses." According to the sublease, each was to run "during the whole term of this lease." Thus they were not revocable at will, which is a distinguishing feature between an easement and a license. Kuhlman v. Steward, supra. As said in Pitzman v. Boyce, 111 Mo. 387, loc. cit. 393, 19 S.W. 1104, loc. cit. 1105, 33 Am.St.Rep. 536, "from its very nature, a license is revocable."
The five cases cited by defendant, when analyzed, do not sustain his contention. Typical of the others is the first, that of Rubel Bros., Inc., v. Dumont Coal & Ice Co., Inc., 111 Misc. 658, 182 N.Y.S. 204, where the court merely held that an agreement to refrain from engaging in a certain business on a certain lot was made for the benefit only of the individuals involved, its purpose being to prevent competition in *776 plaintiffs business and not for the benefit of their land. Thus, the covenant lacked the qualities of an easement. If the reservations in the case at bar were not for the benefit of the dominant tenement, it is difficult to imagine any that would be.
Defendant also contends that under the provisions of the "sublease" agreement, whether it be considered an assignment or a sublease, he had the right, upon proper notice, to an extension of his term, or tenancy for an additional period of ten years beginning August 1, 1951. We do not think so.
From the statement of facts herein it is seen that three times the term of the sublease from Wheeler to Downs was made to end on July 31, 1951 and, in the paragraph containing the Brooms's consent, it is provided that the Brooms consent that Wheeler may sublease to Downs the property "herein demised by this sublease for the whole remaining term of said original lease between the third parties (Brooms) and the first party (Wheeler), marked `Exhibit A', and incorporated in and made a part of this indenture of sublease," and then follows this limitation of the consent: "provided that this consent shall not authorize any further underletting or parting wholly or partially with the possession of said demised premises, or any part thereof, or prejudice or affect any of the covenants, conditions or provisions of said lease, marked `Exhibit A', contained, except to the extent herein expressed."
It seems that all of the parties intended to and did fix the term of Downs as ending on the 31st day of July, 1951. In the sublease itself that term is fixed three separate and different times. Nowhere in the sublease is any expression used which indirectly or otherwise would indicate in the slightest degree that Downs should have any right to extend the time beyond that fixed in the sublease itself. In Brooms's consent it is expressly provided that their consent shall not authorize any further underletting or parting wholly or partially with the possession of the demised premises except to the extent herein expressed. Certainly the "extent herein expressed" was July 31, 1951. No one can fairly consider this sublease without reaching the conclusion that all of the parties, Wheeler, Downs and the Brooms, intended to and did fix the term to that expressed in the sublease itself and in the Brooms's consent.
Defendant also contends that because it was recited in the sublease that the lease between the Brooms and Wheeler is incorporated in the sublease, this of itself gave defendant Downs a right to extend the sublease. The answer to this contention is that the lease between the Brooms and Wheeler was not included without modification in the sublease. The Brooms consented that it be included "provided, that this consent shall not authorize any further underletting, or parting wholly or partially with the possession of said demised premises, or any part thereof, or prejudice or affect any of the covenants, conditions or provisions of said lease, marked 'Exhibit A', contained, except to the extent herein expressed." The Brooms's consent that Wheeler could sublease to Downs was specifically limited to the "remaining term" of the original lease between the Brooms and Wheeler.
Defendant's last contention is that the parties by their conduct construed the Wheeler-Downs lease as an assignment of the Brooms-Wheeler lease basing this on the fact that defendant Downs paid his rent directly to Brooms. A similar contention was made in the case of Leibowitz v. Bickford's Lunch System, 241 N.Y. 489, 150 N.E. 525, and the court held in a well written opinion that such direct payment was no aid to the construction of the sublease.
The judgment should be affirmed. It is so ordered.
DEW, P. J., concurs.
CAVE, J., not participating.