IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

THE CITY OF PENSACOLA,

      Appellant,

v.

SEVILLE HARBOUR, INC., A
FLORIDA CORPORATION,
AND MERRILL LAND, LLC, A
FLORIDA LIMITED
LIABILITY COMPANY,
GREAT SOUTHERN
RESTAURANT GROUP OF
PENSACOLA, INC., A
FLORIDA CORPORATION,

      Appellees.

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D16-2481

_____/

Opinion filed June 1, 2017.

An appeal from the Circuit Court for Escambia County.
J. Scott Duncan, Judge.

Terrie L. Didier and J. Nixon Daniel of Beggs & Lane, RLLP, Pensacola, for
Appellant.

Edward P. Fleming and R. Todd Harris of McDonald, Fleming, Moorhead,
Ferguson, Green & de Kozan, LLP, Pensacola, for Appellee Seville Harbour, Inc.

Robert A. Emmanuel and Adam J. White of Emmanuel, Sheppard & Condon,
Pensacola, for Appellee Merrill Land, LLC.

Charles F. Beall, Jr. of Moore, Hill & Westmoreland, P.A., Pensacola, for Appellee Great Southern Restaurant Group of Pensacola, Inc.

WETHERELL, J.

The City of Pensacola appeals the final summary judgment determining that the lease between the City and Appellee Seville Harbour, Inc., was properly renewed and that an agreement between Seville Harbour and Appellee Merrill Land, LLC, was a sublease, not a *pro tanto* (partial) assignment of the lease. We affirm the trial court's determination that the lease was properly renewed without further comment, and we affirm its determination as to the nature of the Seville Harbour-Merrill Land agreement for the reasons that follow.[1]

**Factual and Procedural Background**

In 1985, the City and Seville Harbour's predecessor-in-interest entered into a lease agreement—which we will refer to as the "Marina Lease"—for three parcels of undeveloped property along the waterfront in downtown Pensacola. The leased property was comprised of uplands and submerged lands, and as contemplated by the Marina Lease, the property has been developed into a marina and related facilities.

At the time the Marina Lease was executed, two of the parcels (Parcels I and

---

[1] We also affirm without further comment the "procedural issues" raised by the City.

III) were owned by the City, while the third parcel (Parcel IA) was owned by the State of Florida and leased to the City. In 1990, the State deeded Parcel IA to the City. None of the provisions of the Marina Lease related to Parcel IA were modified after this change of ownership.

The Marina Lease provided an initial lease term of 30 years for Parcels I and III, which could be "renewed and extended" for an additional 30 years upon written notice from the lessee (now Seville Harbour) to the City. The initial (sub)lease term for Parcel IA was also 30 years, but it could only be renewed in "successive five (5) year increments" upon payment of a "lease fee . . . equal to the appraised rental value . . . charged to [the City] by the State of Florida."

The annual rent due under the Marina Lease is the greater of a per-square-foot "ground rent" or a percentage of the lessee's (now Seville Harbour's) "gross sales" and "gross rentals" in the prior year. The Marina Lease defines "gross sales" as all monies received from business conducted on the leased property "by [Seville Harbour], its subsidiaries or business combinations" (emphasis supplied), and it defines "gross rentals" as all rents received "by [Seville Harbour] from all . . . sublessees or tenants" on the property.

In 2000, Seville Harbour and Merrill Land entered into the "Pitt Slip Marina Sublease Agreement" pursuant to which Seville Harbour "subleased" Parcels IA, III

3

and part of Parcel I[2] to Merrill Land for "the remaining term of the Marina Lease plus any extensions or renewals thereof." This agreement, which we will refer to as the "Marina Sublease," reserved to Seville Harbour "a perpetual non-exclusive easement over and on the property . . . for ingress, egress, parking, signage, utility lines . . . as well as for maintenance, construction, and reconstruction of [the non-transferred part of Parcel I]." It also gave Seville Harbour (and the City) the right to access the property covered by the Marina Sublease "at all reasonable times deemed necessary for the purpose of the Marina Lease."

Thereafter, Merrill Land subleased Parcel IA to Appellee Great Southern Restaurant Group of Pensacola, Inc., which owns and operates two restaurants (The Fish House and Atlas Oyster House) on that parcel. Neither Seville Harbour nor Merrill Land pays additional rent to the City based on the "gross sales" from the restaurants operated by Great Southern.

In 2013, the City sent a "Notice of Default" to Seville Harbour and Merrill Land claiming that Merrill Land was a "partial assignee" of the Marina Lease and that additional rents were owed to the City based on the gross sales generated by the restaurants operated by Great Southern, which the City claimed was a "business

---

[2] The legal description of the property covered by the Marina Sublease includes all of Parcel I (containing 8.529 acres) less a specifically described portion of the parcel containing "7 acres more or less." Thus, only approximately 1.5 acres of Parcel I is covered by the Marina Sublease.

4

combination" of Merrill Land. Appellees' counsel responded in a terse letter disputing the City's premise that the Seville Harbour-Merrill Land agreement was an assignment and not a sublease. The City thereafter withdrew the default notice.

Subsequently, in 2014, Seville Harbour and Merrill Land filed a declaratory judgment action seeking determinations that the agreement between Seville Harbour and Merrill Land was a sublease, not an assignment, and that the Marina Lease was properly renewed. The City filed an answer and third-party complaint joining Great Southern as a third-party defendant in which it argued among other things that (1) additional rent was due under the terms of the Marina Lease on Great Southern's gross sales because Merrill Land was an assignee under the lease by virtue of the Marina Sublease and Great Southern was a "business combination" of Merrill Land, and (2) the Marina Lease was not properly renewed as to Parcel IA because the "lease fee" applicable to that parcel had not been paid.

The parties each filed motions for summary judgment, and after a hearing, the trial court entered a final summary judgment in favor of Appellees. The trial court ruled that the City was not entitled to additional rent based on Great Southern's gross sales because the Marina Sublease between Seville Harbour and Merrill Land was a sublease, not a *pro tanto* assignment, and even if the Marina Sublease was an assignment, Great Southern was not a "business combination" of Merrill Land. The court also ruled that the Marina Lease was properly renewed because under the plain

5

language of the lease, the "lease fee" for Parcel IA was equal to the appraised rental value charged by the State to the City and, since 1990, no amount was being charged to the City.[3]

This timely appeal followed.

**Analysis**

The crux of the parties' dispute in this case is whether the agreement between Seville Harbour and Merrill Land is a *pro tanto* assignment of the Marina Lease (as the City contends) or a sublease (as Appellees contend). This is an issue of law, which we review de novo. See BOLD MLP, LLC v. Smith, 201 So. 3d 1261, 1261 (Fla. 1st DCA 2016).

It is well-established that the nature of a real estate transaction is determined by its legal effect, not its form or title. C.N.H.F., Inc. v. Eagle Crest Dev. Co., 128 So. 844, 845 (Fla. 1930) ("[T]he form of an assignment of lease is immaterial; its character in law being determined by its legal effect."). Accordingly, the title of the Marina Sublease and its use of the term "sublease" throughout to describe the transaction between Seville Harbour and Merrill Land is not dispositive.

As a threshold matter, we agree with the parties and the trial court that *pro tanto* assignments are recognized in Florida. See id. ("An assignment by a lessee

---

[3] The trial court also ruled that the renewal term for Parcel IA was 30 years, rather than 5 years. The City did not challenge that ruling on appeal.

transfers his entire interest in the demised premises <u>or a part thereof</u> for the unexpired term of the original lease.") (emphasis added).  Accordingly, if the Marina Sublease is an assignment, it is a *pro tanto* assignment because the Marina Lease gave Seville Harbour a leasehold interest in three parcels, but Seville Harbour transferred to Merrill Land an interest in only two of those parcels and part of the third.

The test for determining whether a real estate transaction is an assignment (either *pro tanto* or full) or a sublease is whether the lessee "transfers [1] his <u>entire interest</u> in [all or part of the leased property] for [2] the <u>unexpired term</u> of the original lease."  <u>Id.</u> (emphasis added); <u>see also</u> <u>Estate of Basile v. Famest, Inc.</u>, 718 So. 2d 892, 892 (Fla. 4th DCA 1998) ("The test between an assignment and a sublease is whether the lessee transfers his entire interest in the property; if no reversionary interest is retained, the transaction is considered an assignment."); <u>but cf.</u> <u>MDS (Canada) Inc. v. Rad Source Techs., Inc.</u>, 143 So. 3d 881 (Fla. 2014) (rejecting the use of this bright-line rule to distinguish between the assignment of a license agreement and a sublicense and holding that a multi-factor, case-by-case analysis is required in that context).  Accordingly, it follows that if the lessee transfers less than his entire interest in the part of the leased property at issue—or his entire interest for less than the unexpired term of the lease—then the transaction is a sublease.

Here, it is undisputed that the term of the Marina Sublease was for the entire unexpired term of the Marina Lease.  Accordingly, resolution of this case turns on

7

whether Seville Harbour transferred to Merrill Land its "entire interest" in the property covered by the Marina Sublease.

The parties have not cited, nor has our research located, any Florida case addressing whether a lessee has transferred his "entire interest" in the leased property at issue when the lessee retains an easement in the property. However, this issue has been addressed by courts in other states and those courts have held that the transfer is a sublease rather than an assignment when the lessee retains an easement in the leased property. See, e.g., Damaro Rest. Group, LLC v. Gazette Realty Holdings, LLC, 21 Misc. 3d 1131(A), 873 N.Y.S.2d 510 (Sup. Ct. 2008) (finding an agreement to be a sublease where the grantor retained the right to enter the demised property: "While these rights to enter the property and make use of it may be small, the existence of these rights to enter, use and occupy the demised premises defeat the claim that [the grantor] transferred its entire estate."); First Trust Co. v. Downs, 230 S.W.2d 770, 774–75 (Mo. Ct. App. 1950) (finding agreement to be a sublease where grantor retained easements on the demised property during the entire term of the sublease); McNeil v. Kendall, 128 Mass. 245 (1880) (finding agreement to be a sublease where lessee transferred a portion of the leased property for the remainder of the lease term, but granted an easement on the retained premises: "It is plain, therefore, that . . . while he conveyed to the defendants his whole term for years, did not convey his whole interest in the premises, which the defendants had the right to

8

occupy and enjoy under their lease; but retained in himself all the land . . . subject to the easements granted to the defendants. The interest which he conveyed to the defendants was a portion of the entire estate, and not his whole estate in a portion of the same.").

These cases are consistent with the settled principle of Florida law that although an easement is not an "estate" in land, it is an "interest" in land. See Burdine v. Sewell, 109 So. 648, 653 (Fla. 1926) ("He, of course, must have known that a grant of an easement should be drawn and executed with the same formalities as a deed to real estate, an easement being an interest in land."); Dianne v. Wingate, 84 So. 3d 427, 429 (Fla. 1st DCA 2012) ("Although an easement is a real property interest in land, it is a right distinct from ownership of the land itself and does not confer title to the land on which the easement is imposed."); Keys Island Properties, LLC v. Crow, 97 So. 3d 329, 330 (Fla. 3d DCA 2012) (quoting Dean v. MOD Props., Ltd., 528 So. 2d 432, 433 (Fla. 5th DCA 1988)) ("[O]wnership of land, or an ownership interest in land, constitutes an 'estate' as distinguished from an easement, which is the right in one other than the owner of the land to use land for some particular purpose or purposes."); Am. Quick Sign, Inc. v. Reinhardt, 899 So. 2d 461, 464–65 (Fla. 5th DCA 2005) ("Although an easement is not an estate in land and its creation does not convey title, it is an interest that gives to one other than the owner a right to use the land for some specific purpose.").

9

Accordingly, when a lessee transfers his leasehold interest to a third party, but retains an easement in the leased property, it cannot be said that the lessee transferred his "entire interest" in the property.

Here, the record establishes that Seville Harbour transferred less than its entire interest the property covered by the Marina Sublease to Merrill Land because Seville Harbour specifically retained "a perpetual non-exclusive easement over and on the property . . . for ingress, egress, parking, signage, utility lines . . . as well as for maintenance, construction, and reconstruction of [the non-transferred part of Parcel I]." Additionally, Seville Harbour specifically retained the right of access to the property covered by the Marina Sublease "at all reasonable times deemed necessary for purposes of the Marina Lease." Based upon these reservations, and the case law cited above, we find no error in the trial court's conclusion that the Marina Sublease is, in fact, a sublease, and not a *pro tanto* assignment.

## Conclusion

In sum, because the trial court correctly concluded that the Marina Sublease was a sublease and not a *pro tanto* assignment (and because we find no merit in the other issues raised by the City[4]), we affirm the final summary judgment.

---

[4] We did not need to consider the merits of the City's argument that Great Southern is a "business combination" of Merrill Land because, as the City conceded in its brief and confirmed at oral argument, that issue is moot if we determine—as we did in this opinion—that the Marina Sublease is not an assignment.

10

AFFIRMED.

WOLF, J., and LESTER, DON H., ASSOCIATE JUDGE, CONCUR.