JONES & OGLEBAY, Appellants, v. KANSAS CITY BOARD OF TRADE, and MISSOURI, KANSAS & TEXAS TRUST COMPANY, Appellants.

Kansas City Court of Appeals, April 6, 1903.

1. Landlord and Tenant: INJUNCTION: COMPELLING TENANT TO OCCUPY: RES ADJUDICATA. A part of the decree refusing to compel the defendant board of trade to move and occupy premises leased from the plaintiffs is affirmed as *res adjudicata* in the case of Moore v. Guardian Trust Company, 173 Mo. 218.

2. ————: ASSIGNMENT OF LEASE: ONE YEAR WITH OPTION OF FIVE. An option in a lease for one year to extend the time a greater length transforms the contract into a lease for more than a year, and the lessee under the statute may transfer the lease.

Appeal from Jackson Circuit Court. — *Hon. J. H. Slover*, Judge.

REVERSED IN PART.

*Robinson & Carkener* for appellants.

(1) It is competent to show by parol the circumstances and surroundings of parties to a contract, the subject-matter of the contract and the object aimed at by the parties in making the contract, so that the language of the contract may be understood by the court, as it was by the parties. Wharton's Evidence (3 Ed.), secs. 939-40, note 1, p. 101; Brown's Parol Evidence, p. 179, sec. 53; Bradner on Evidence, pp. 149-150 and 153, par, 6; 1 Greenleaf's Evidence, sec. 286; Davis v. Hendrix, 59 Mo. App. 444; Wood's Practice Evidence, p. 72; Ellis v. Harrison, 104 Mo. 270-279. (2) Appellants claim that it was error for the circuit court to grant an injunction restraining the board of trade from assigning the lease of the Temple Block to the trust company. The evidence shows that the trust company

assumed the whole lease; and this amounts to an assignment, for the distinction between an assignment and a sublease is that the assignment transfers the entire lease, whereas a sublease reserves a portion of the lease to the lessees. Railroad v. Railroad, 135 Mo. 173. (3) Appellants claim that the trust company was guilty of no legal wrong in inducing the board of trade and its members to remain in the Exchange Building, by the means and under the circumstances developed by the testimony in the case, is not sustained by a single one of the authorities cited by them. Such action is clearly malicious ''in the sense of being aimed at obtaining some advantage for himself at the expense of one of the parties to the contract,'' and is actionable. Pollock on Contracts, p. 499; Railroad v. McConnell, 82 Fed. 65; Angel v. Railroad, 151 U. S. 1; Delz v. Winfree, 26 Am. St. 755.

*Trimble & Braley* for defendant appellants.

(1) The lease of the Temple Block as written shows no promise to use the premises for any particular purpose, and it is unlawful to vary the writing by parol evidence as to what had been previously stated as the intended use. To express an intent to occupy a house is one thing, but to bind one's self to so occupy it is quite another. Morgan v. Porter, 103 Mo. 135; Burr v. Spencer, 26 Conn. 159, 68 Am. Dec. 379; Nave v. Berry, 22 Ala. 383; Tracy v. Iron Works, 104 Mo. 193; MacLeod v. Skiles, 81 Mo. 595; Davis v. Scovern, 130 Mo. 303. (2) The lessee has the right to use the premises for any lawful purpose, no matter what was contemplated at the time of making the lease, unless the lease itself, by restrictive words, limits the use; but a covenant in restraint of any beneficial use will not be implied even if there be a provision in the lease for a particular use; in the absence of restrictive words forbidding a different use, and a subtenant has the same right to

use the premises for any lawful purpose not forbidden by the words of the lease. 6 Lawson's Rights and Remedies, secs. 2839, 2830 and 2801; Gear on Landlord and Tenant, sec. 97; Wood on Landlord and Tenant, p. 649; 1 Washburn on Real Property (1 Ed.), pp. 545, 546; Nave v. Berry, 22 Ala. 383; Bergman v. Noyes, 6 Wis. 1; Reed v. Lewis, 74 Ind. 439-440. (3) Where the lessee refuses to occupy the premises the measure of the lessor's damages is the stipulated rent and nothing more. Grear on Landlord and Tenant, secs. 12, 88, 109; 2 Sutherland on Damages, p. 147; 6 Lawson's Rights and Remedies, sec. 2801, p. 5475; Cleveland v. Bryant, 16 S. Car. 634; Kelly v. Dutch Church, 2 Hill 105; Hughes v. Hood, 50 Mo. 350. (4) This lease, being for a term less than two years, could not be assigned by the lessee without the consent of the lessor, because our statute law forbids it. Any assignment without the lessor's consent would have been void as to him, but there is no law against subletting and the right to sublet exists in every lease unless denied by the terms thereof. The assignment of a lease consists of a transfer by the lessee of his entire interest in the premises for the whole of his term; a subletting consists in the leasing to another of a portion of the premises for part or the whole of the term, or in leasing the whole of the premises for a portion of the time. Taylor on Landlord and Tenant (8 Ed.), sec. 109; Railroad v. Railroad, 135 Mo. 173. (4) The trial court erred in enjoining the subletting of the premises, because the law gives that right to every lessee. Nave v. Berry, 22 Ala. 383; Morgan v. Porter, 103 Mo. 135. (5) The Supreme Court has recently decided all the important issues of this case, in the case of Moore et al. v. Guardian Trust Co., Interpleader, and Jones and Oglebay, Interpleaders.

BROADDUS, J.—This suit was instituted on the 28th of June, 1898, against P. T. Hamm and others,

officers of the Kansas City Board of Trade, at which time a temporary restraining order was made. On the 30th day of July of said year there was issued what was called a temporary injunction, which was modified on the 6th day of August, following. The defendant trust company petitioned to be made a party to the proceedings and filed its answer. On the 29th day of November a final decree was entered in the case making the temporary injunction in part perpetual, from which all parties appealed.

As all the pertinent facts were before the Supreme Court, in the case (173 Mo. 218) wherein John W. Moore et al. were plaintiffs and the Guardian Trust Company (formerly Missouri, Kansas & Texas Trust Company) and George W. Jones and James H. Oglebay were interpleaders, as a matter of convenience we have adopted the statement to be found in said opinion, as follows:

The controversy is this: Prior to May 31, 1898, the Board of Trade occupied a part of the Exchange Building, on Eighth and Wyandotte streets, of which Richard Gentry was the owner. Their relations became unpleasant, and the Board of Trade, and its members, as individuals, who had offices in the building determined to move. The plaintiffs Jones & Oglebay owned a building on Missouri avenue and Walnut street, called Temple Block, and the Board of Trade, on May 31, 1898, leased the building from Jones & Oglebay for one year, from July 1, 1898, for a rental of sixteen thousand dollars, with a privilege of renewal for five years. The lessors were to furnish free, heat, water, light, and elevator and janitor service, and to retain the offices then occupied by them. The lessors were to change "the four storerooms on the first floor into one room in complete order for a trading room for the Board of Trade, to the satisfaction of the building committee of the second party, the portion of the ceiling over the trading hall corresponding with the open space

above, the main entrance from the hall to the trading room to be between the two elevators." It was further stipulated: "The second parties shall have the privilege of underletting any portion of said premises during said term, and at its own expense, causing such changes, by way of partition, or otherwise, as it may deem proper, under the supervision of one of the first parties." The lease expressed to be "upon condition, however, that no personal liability of any kind is assumed or created upon the part of any officer, director or individual member of the said Board of Trade."

Pursuant to the lease the lessors notified all the tenants then in Temple Block to vacate on July 1, 1898, and made the changes on the first floor above provided for. The Board of Trade appointed a committee to fix the rental of the rooms in the building (Temple Block) other than those intended to be used by it, and they were all assigned, by lot, to the members.

The trust company in June, 1898, acquired title to the Exchange Building from its former owner, Gentry, and at once set about the prevention of the Board of Trade and its members from leaving the Exchange Building, and accordingly on June 22, 1898, the trust company made a written proposition to the Board of Trade that if it would remain in the Exchange Building for a term of five years, the trust company would assume the Jones & Oglebay lease, and in addition would not only charge no rent for the use of the trading hall or for the rooms used by the secretary of the Board of Trade, but would pay the Board of Trade a bonus of five hundred dollars a month. Later on the same day the trust company further, in order to make sure that the trust company would meet the assumption of the $16,000 rental of the Temple Block, proposed to allow the Board of Trade to collect the monthly rentals from the tenants in the Temple Block and keep them until the end of the month and if the trust company did not pay the rent on the Temple Block within twenty-

four hours after it was due, to allow the Board of Trade to apply the rents so collected to the payment of the rent due for said Temple Block.

Afterwards on June 23, 1898, the trust company further wrote to the Board of Trade saying the proposition did not contemplate that all the members then occupying rooms in the Exchange Building should sign leases for five years, and further saying that the lease contemplated was to be without personal liability of the officers or members of the Board of Trade and agreeing to rely upon the honor of the Board of Trade to keep its promises "as Messrs. Jones & Oglebay relied upon to get their $16,000 for a year, which will most certainly be paid by us and thus relieve the Board of Trade and all its members from any obligation of honor or otherwise to the owners of the Temple Block."

This proposition was submitted to the members of the Board of Trade on June 23, 1898, and was accepted by a majority vote of the members. Thereupon, on June 24, 1898, the trust company wrote Jones & Oglebay as follows:

"Gentlemen. The undersigned having purchased the Exchange Building recently made a proposition to the Board of Trade for rental of portions of said building, and in said proposition agreed to assume the lease which you had made to the Board of Trade for the Temple Block for one year from July 1, 1898. We would like to meet you with a view of ascertaining for what sum we can secure a cancellation of this lease, releasing the lessees from any liability to pay rent thereon. Or in the event that you would not care to negotiate or consider such a proposition, we will, of course, under our promise to the Board of Trade, be obliged to pay the rent and sublet the Temple Block and get whatever we can out of it. If you will kindly indicate a place and time where and when we can meet you and talk over this matter, we would very much like to have you do so.

"MISSOURI, KANSAS & TEXAS TRUST COMPANY,

"By A. E. STILLWELL, President."

To this letter Jones & Oglebay never made any reply. The attorney of the Board of Trade then prepared a lease from the Trust Company to the Board of Trade, which was executed by the trust company but while said attorney was reading it to the officers of the board of trade, and before it was executed by them, Jones & Oglebay, on June 28, 1898, got out an injunction against the Board of Trade restraining it from assigning or transferring or subletting Temple Block or any portion thereof, except the basement, to the trust company or to any person other than a member of the Board of Trade or to one engaged in the grain or like business, and also restraining the board from "making any order, passing any resolution, or making any contract which would prevent or tend to prevent the said association (or members thereof) from locating its trading hall and officers in and otherwise using and occupying plaintiff's said building (Temple Block)." The lease which said Board of Trade was restrained from executing contained the provisions covered by the propositions of the trust company—those that related to and bound the trust company to assume the lease of Temple Block, and which gave the trust company any rights under that lease, were as follows:

"4. First party assumes the contract made by the second party on the 31st day of May, 1898, with George W. Jones and James H. Oglebay for lease of Temple Block, *and expressly agrees to pay to said Jones & Oglebay the rent therein provided, said first party expressly waiving any and all questions as to the said contract to pay rent not being binding at law.* First party further agrees to indemnify and hold harmless said board, and each and every officer and member thereof, from any loss, damage, costs, attorney's fees and expenses by reason of any failure to comply with said contract as to said Temple Block, and by reason

of not moving to Temple Block or by reason of any litigation arising out of or in any wise connected with either of said matters. Provided, however, that in any suit or suits instituted by said Jones & Oglebay against the board, its officers or members, the first party shall be in due time advised thereof, and through its attorneys shall be permitted to have the management and defense of said suits. The said first party shall pay the monthly rental on the Temple Block two days prior to its becoming due, and in default thereof the secretary of the board may collect sufficient of the rents of the Exchange Building to pay the same, and after making such payment the balance shall be turned over to the first party.

"5. The second party further agrees either to assign to first party its said lease for the Temple Block, or to sublet to the first party, or to whomsoever it may designate, portions of said Temple Block as from time to time requested by the first party, and if sublet to assign all rent to the first party, provided, however, that the board of directors of the second party, or its secretary, shall first approve the desirability of the tenant, and provided, further, that all persons now in said Temple Block shall be accepted as tenants if the first party so desires, it being understood that the first party shall agree and the first party does hereby agree to save the second party, its officers and members harmless from any and all liability or damages for making of any of said subleases. The first party further agrees to pay the secretary of the second party the sum of twenty-five dollars per month for looking into the question of the desirability of tenants so long as the lease for the Temple Block shall not be cancelled by an agreement between Messrs. Jones & Oglebay and the Missouri, Kansas & Texas Trust Company, not exceeding, however, one year."

On the 1st of July, 1898, Jones & Oglebay wrote to the Board of Trade saying that they had made the

changes required by their lease in Temple Block and that said building "is now vacant and ready for occupancy by your association, and the full possession of the same and every part thereof except such rooms as were expressly excepted and reserved to us by the terms of said lease, is hereby tendered to your association to be used and occupied by them for the purpose of such business as is usually carried on and transacted by your association and the members thereof. And we hereby demand that you take immediate possession of said building for said purposes in accordance with said contract."

On the same day the Board of Trade replied to said letter as follows:

"Your letter of July 1, 1898, received. The Board of Trade of Kansas City, Missouri, demands of you the possession and keys of the building known as the Temple Block, to be delivered to it pursuant to the terms of the written contract of date of May 31, 1898. The Board of Trade denies your right to make any conditional tender, or to change or alter the contract, or to limit any right of use given by it. Any failure on your part to comply with the terms of the contract will operate as a forfeiture thereof."

On the same day Jones & Oglebay wrote to the Board of Trade as follows:

"Gentlemen: Replying to your letter of this date, will say that, inasmuch as under the terms of the contract between you and us, we are required to operate the elevator and furnish heat, light, janitor service, etc., and are also entitled to retain our offices in the building, we do not very well see how we could deliver to you the keys of the building, and, at the same time, comply with the terms of our contract. However, the keys to and possession of such portions of the building as you are entitled to the possession of, are ready for you at the building, and you can have the same by calling therefor; but the fact of our delivering to you the keys

and possession of such portions of said building as you are entitled to under the terms of our contract must not be construed as a waiver, on our part, of our right to have your association occupy our building or of our rights in regard to any assignment or subletting of said building, or any portions thereof. Those are matters which, if we could not be able to agree in regard to them, must be settled by the courts. It is our intention to fully and fairly comply with the contract on our part, and if at any time you should be of the opinion that we are not thus complying with our contract, we would be very glad to have you call our attention to the matter and specify wherein our failure consists.''

Nothing more was done by either Jones & Oglebay or the Board of Trade looking towards the latter moving into Temple Block. On the 6th of August, 1898, the temporary injunction was amended so as to restrain the Board of Trade from making any assignment of the lease, and from making any subletting of any portion of Temple Block, excepting the basement, to any person not connected with the Board of Trade. On the 5th of November, 1898, the injunction was made perpetual, and the Board of Trade was enjoined from assigning or transferring the lease of Temple Block or the rights and privileges of the Board of Trade under the lease to the trust company, either directly or indirectly. But the court found the issues for the defendant, ''so far as they relate to the removal to, and occupancy of said Temple Block by said Board of Trade.'' The Board of Trade appealed from this judgment, and it is represented to this court that the appeal is now pending in the Kansas City Court of Appeals.

This is the injunction proceeding alluded to in said opinion. The plaintiffs herein appealed from that part of said final decree which was for the defendant so far as it was sought to compel said Board of Trade to remove to and occupy said Temple Block. As the

Supreme Court in said opinion holds that said Board of Trade, under the terms of the lease from plaintiffs, was not compelled to remove to and occupy said building, the question on plaintiff's appeal from said final decree has already been decided. And as the parties here are the same in fact as they were in said other case, the question raised is *res adjudicata*. That part of the said decree is affirmed.

The defendant Board of Trade appealed from that part of said final decree enjoining it from assigning or transferring the lease to the Temple Block, or any of its rights or privileges under said lease to the trust company, either directly or indirectly. As to whether the Board of Trade had the right to transfer its lease, the court expresses no opinion; but intimates that it was a doubtful question because of the option given for five years, in addition to the one year specified. Under section 4107, Revised Statutes 1899, a tenant for a term not exceeding two years is prohibited from assigning his term without the written consent of his landlord. The language of the lease, as to its duration, reads: "for a term of one year to begin on the first day of July, 1898, and to end on the 30th of June, 1899," and, "the second party is to have the option of renewing the lease from year to year, which option may be exercised from year to year for five years from July 1, 1898."

Upon principle, this question falls within the rule applied in Donovan v. Brewing Co., 92 Mo. App. 341, where it was held: "An option in the lessee of a lease for one year to extend the term to a greater length than one year, transforms the contract into a lease for more than a year." Such being the law, it follows that the plaintiff was not entitled to the injunction restraining the Board of Trade from transferring its lease to the defendant trust company.

It therefore follows that the cause as to the defendant be reversed and affirmed as to the plaintiff. All concur.