Argued 20 October, decided 28 November, 1904.

## MEYER v. LIVESLEY.

[78 Pac. 670.]

ASSIGNABILITY OF CROP LEASE WITHOUT LANDLORD'S CONSENT.

A lease of farming land carrying the use of divers implements of husbandry thereon owned by the lessor, the rent to be a proportion of the crop, is usually unassignable without the lessor's consent. Such an assignment will ordinarily work a forfeiture. In the present case the lease was evidently made on account of confidence in the skill of the lessee, though it did not stipulate particularly as to the manner of cultivating the crop, and must be considered a personal contract.

From Polk : REUBEN P. BOISE, Judge.

Suit for an injunction by J. W. Meyer against T. A. Livesley & Co. and John Vincent, resulting in a decree as prayed for, from which Livesley & Co. appeal.

REVERSED.

For appellants there was a brief over the names of William M. Kaiser and Woodson T. Slater, with an oral argument by Mr. Slater and Mr. Wirt Minor.

For respondent there was a brief and an oral argument by Mr. John H. McNary and Mr. Oscar Hayter.

MR. JUSTICE BEAN delivered the opinion.

This is a suit to restrain the defendants from trespassing upon or interfering with the plaintiff's possession of a hopyard. On March 7, 1900, I. M. Simpson, being the owner of a certain tract of land in Polk County, upon which the hopyard in question was situated, leased the yard, with the improvements thereon, consisting of dry kilns, hop poles, etc., to the defendants, for the years 1900 to 1904, inclusive. On October 25, 1902, the defendants sublet the yard, together with the hop kilns, baler, and farming implements mentioned in the lease from Simpson to them to W. D. Huston, agreeing to furnish Huston one of the dwelling houses on the Simpson place, or to remodel another building thereon, and the use of Simpson's horses

in the cultivation of the hops at a certain stipulated rate per day, in consideration of which Huston agreed to pay them, as rental, one fourth of the "average quality" of the hops produced on the land during the years of 1903 and 1904. On January 11, 1904, Huston assigned to the plaintiff all his right and interest in and to the lease or contract between himself and the defendants. This assignment was not recorded, and on January 23, 1904, the defendants, without knowledge or notice thereof, entered into a new lease with Huston for the current year, taking from him a mortgage on his interest in the crop to be grown during that year to secure a balance due for advances made the previous year. It was stipulated in the new lease that, in case of a violation of any of its terms by Huston, the defendants should have the right to reënter and take possession of the hopyard, to complete the cultivation of the crop, and harvest and sell it, paying over the surplus, if any, to Huston. In March, 1904, the defendants attempted to enter and take possession of the hopyard, on account of a violation of the provisions of the lease or agreement between them and Huston, when this suit was brought by the plaintiff to enjoin them from doing so.

The only question we deem it necessary to consider is whether the lease from the defendants to Huston, made in October, 1902, was assignable by Huston without the consent of the defendants. The plaintiff claims title under such an assignment, but, unless Huston had authority to assign the lease to him, he has no standing in court, and the other questions become immaterial.

As a general rule, the power of assignment is incident to the estate of a lessee of real property, unless it is restrained by the terms of the lease: Wood, Land. & Ten. p. 529; Taylor, Land. & Ten. (9 ed.) § 402. But a lease of land upon shares, including the use of buildings, farm implements, stock, and other personal property, is re-

garded as a personal contract, and not assignable without
the consent of the lessor, because the amount to be re-
ceived by the lessor, and the care of the property depend
upon the character, industry, and skill of the lessee : Tay-
lor, Land. & Ten. (9 ed.) §§ 24, 24*a*; *Randall* v. *Chubb*,
46 Mich. 311 (9 N. W. 429, 41 Am. St. Rep. 165); *Lewis*
v. *Sheldon*, 103 Mich. 102 (61 N. W. 269).  *Randall* v. *Chubb*
is much in point.  Chubb leased certain premises to Stod-
dard upon shares for the term of three years, with the
privilege of five.  Stoddard was to do all the work, find all
the seed, and deliver to the lessor one third of the crop.
The farm was to be cropped in a certain specified way,
and, as in the case at bar, the lessee was to have the use
of certain property belonging to the lessor.  The court
held that the lease was not assignable, and that an attempt
to assign it worked a forfeiture of the estate of the lessee,
and the lessor could take immediate steps to recover pos-
session.  "The very nature and character of the lease or
agreement," says Mr. Chief Justice MARSTON, "shows that
it was a personal one to the defendant, and could not be
assigned by him to a third party without the consent of
his lessor.  The rent or share which the latter would re-
ceive must depend very much upon the character of the
lessee, and the latter could not place a party in possession
of the premises who might not be a good husbandman,
and who might not be able to carry on the farm opera-
tions in a good, careful, and proper manner.  Under such
a lease the landlord has a right to choose his tenant, and
he may be willing to lease upon shares to one man, and
yet be wholly unwilling to let another have possession upon
any terms.  So, with reference to the use of his farm im-
plements, one might be a careful, prudent man, who would
take good care of them, while another, more reckless,
would not by the owner be permitted to use them upon

any terms." The same principle was reaffirmed in *Lewis v. Sheldon*, 103 Mich. 102 (61 N. W. 269).

The cases of *Dworak* v. *Graves*, 16 Neb. 706 (21 N. W. 440), and *Yates* v. *Kinney*, 19 Neb. 275 (27 N. W. 132), are not in fact in conflict with this doctrine. They involve the right of a lessee of property on shares to sell or mortgage his interest in the crop after it has been grown without the consent of the lessor, and not the right to assign or transfer all his estate or interest under the lease to another before the crop is raised. The terms of the lease from the defendants to Huston bring it directly within the doctrine of the Michigan cases. The lease included not only the hopyard, the successful cultivation of which necessarily depended upon the industry and skill of the lessee, but also the use of certain buildings, farm implements, and personal property, the care of which likewise depended upon the character of the lessee. In addition to this, the lease is indefinite as to its terms. It does not contain any stipulation as to the manner in which the hops shall be cultivated, cared for, harvested, or prepared for the market — provisions usual in leases of real property. Its nature and terms would seem to indicate that it was made by the defendants in reliance upon the ability, character, and skill of Huston. From the character of the agreement and the subject-matter thereof, we are led to conclude that it was a personal contract, which Huston could not assign or transfer so as to substitute another in his place as lessee without the consent of the defendants.

These views result in the reversal of the decree and the dismissal of the bill, and it is so ordered.     REVERSED.