**KANSAS CITY AREA TRANSPORTATION AUTHORITY, Plaintiff-Respondent,**

v.

**James G. ASHLEY, Sr. and James G. Ashley, Jr., Individually and as Co-Partners, Defendants-Appellants**

**No. KCD 26190.**

Missouri Court of Appeals,
Kansas City District.

Oct. 2, 1972.

Hines & Magee, Homer R. Hines, L. R. Magee, Kansas City, for defendants-appellants.

William Icenogle, Harry P. Thomson, Jr., John R. Caslavka, Kansas City, for plaintiff-respondent.

WASSERSTROM, Judge.

This suit was instituted by plaintiff Area Transportation Authority (respondent here, and hereinafter referred to as ATA) to enjoin defendants (appellants here) from blocking access to three certain parking lots. The issue presented is whether the parking rights which ATA claims were legally assignable to it. An injunction was granted as prayed in the trial court, and defendants pursue this appeal.

Both parties claim their rights from Kansas City Transit, Inc., (hereinafter referred to as "Transit") or its wholly owned subsidiary Kansas City & Westport Belt Railway Co. (hereinafter referred to as "Belt"). Prior to 1962, Transit not only operated the public bus transportation system in Kansas City, but in addition it operated through its subsidiary Belt a 12½ mile switching railroad in the southern part of the city. On December 4, 1962, Belt entered into a contract to sell to the defendants that switching operation and all premises and property rights in connection therewith, including the railroad right-of-way. The Agreement of Sale specifically provided that the sale and transfer to the defendants was being made "for the purchase price set forth in paragraph 2 hereinbelow and the consideration set forth in paragraph 3 hereinbelow". Paragraph 3, so referred to, contained an agreement by defendants "to grant a license to Kansas City Transit, Inc. and its successors, for the exclusive use, at a fixed charge of One Dollar ($1.00) per year," of the three parking lots now in question, which are located on the railroad right-of-way. That paragraph continues "said license to commence upon the consummation of said sale and to continue so long as said fixed charge is paid each year."

That Agreement of Sale was thereafter implemented by various documents, one of which is denominated License Agreement and which was executed December 27, 1962. Under the terms of that document, defendants granted a license to Transit to use the three parking lots mentioned, to be used "for parking lot purposes or for such other purpose or purposes as desired by Licensee in connection with the operation of Licensee's business". The License Agreement further provides, consistent with the provisions of the December 4, 1962 Agreement, that the license "shall continue from year to year hereafter so long as the Licensee pays the sums provided for in paragraph 3 below". The License Agreement also contains provision in customary form that Transit was to indemnify and save defendants harmless by reason of any damage to property or injuries or death growing out of Transit's use of the premises, and there was also an agreement by Transit to conform to all laws and keep the premises free from filth and nuisance.

Thereafter, and until the early part of 1969, Transit continued to operate a mass transportation bus line in Kansas City. A major element of this bus system was the Country Club line. The three parking lots covered by the agreements hereinabove described were located adjacent to the Country Club bus line, and Transit made those lots available free of charge to patrons of the bus line so that these patrons could park their cars and then ride a bus into the downtown area. The parties have stipulated that the use of parking lots in this fashion provided an advantage in connection with mass bus transportation. The record shows that an average of 55 automobiles utilized these parking lots daily. It is without dispute that Transit duly paid the

required One Dollar per year to maintain the License Agreement in continuous existence.

On February 1, 1969, Transit sold its entire bus operation to ATA. As part of that sale, Transit conveyed and assigned to ATA all of Transit's rights under the License Agreement between it and the defendants, dated December 27, 1962.

Shortly after the Contract of Sale from Transit to ATA, the defendants' attorney wrote to ATA demanding payment for the use of the parking lots of approximately $6,000.00 a year. A telephone conversation then followed between defendants' attorney and one of the ATA officials, in which the attorney stated that defendants would not accept the assignment from Transit to ATA and that defendants would not permit the use of the parking lots by ATA except upon the payment mentioned, which the attorney stated was the standard and going rate. When no affirmative response to this demand was forthcoming from ATA, the defendants barricaded the entrances to the lots. This lawsuit for an injunction followed.

In opposition to the request for injunction, defendants contended in the trial court and continue to contend here that the right granted by them to Transit for the use of the three parking lots was a bare license, which as a matter of law is nonassignable. In support of that contention, defendants make two arguments: (a) that the title of and the language used in the document is solely that of license; and (b) that the arrangement between defendants and Transit was one upon personal trust and confidence.

I

■ If defendants are correct in their position that all which they granted to Transit was a bare license to use the parking lots, then it follows that the parking rights were nonassignable. 25 Am.Jur.2d, Easements and Licenses, § 126, p. 528;

Williams v. Diederich, 359 Mo. 683, 223 S. W.2d 402. However, a determination as to the true nature and legal character of the rights granted to Transit cannot rest solely on the matter of terminology used in the document of transfer. Rather, that determination must be made upon a consideration of the intention of the parties as gathered from all the provisions in the agreements between them and all the surrounding circumstances. 53 C.J.S. Licenses § 79, pp. 806–807; 28 C.J.S. Easements § 2 b, p. 627.

■ In attempting to develop the true nature of the rights which were granted to Transit as part of the December 19, 1962 transaction, ATA places considerable stress on the fact that the grant runs to Transit "and its successors". From this ATA argues that the parties intended Transit's rights to be transferable. On the other hand, defendants argue that the phrase "and its successors" does not appear in the License Agreement itself and therefore cannot be considered. We are of the opinion that the License Agreement dated December 27, 1962 must be read together with and in light of the underlying Agreement of Sale dated December 4, 1962, and that the phrase "and its successors" is some evidence that the parties intended Transit's rights to be transferable. However, we need not pursue this point, because there are other factors here, which are even more compelling to that ultimate conclusion.

■ One of those additional factors is that the "license" is not revocable at the will of the grantor, but instead by its express terms was to remain in effect so long as Transit continued to pay $1.00 a year. The essential attribute of a bare license is the right of the grantor to freely revoke it any time. 25 Am.Jur.2d, Easements and Licenses, § 128, p. 530; First Trust Co. v. Downs, Mo.App., 230 S.W.2d 770, l. c. 775. The absence of revocability at the option of the defendants is sufficient in itself to demonstrate that the rights conveyed to

Transit in this case were greater than that of a bare license.

■ Moreover, the rule is that when a grantee pays valuable consideration for the grant then the rights will be deemed to be beyond that of a bare licensee. Lewis v. Kaplan, Mo.App., 5 S.W.2d 699; Gibson v. Sharp, Mo.App., 277 S.W.2d 672, 677; Wilson v. Owen, Mo., 261 S.W.2d 19; Paul v. Blakely, 243 Iowa 355, 51 N.W.2d 405. In our case, the grant of parking rights to Transit is unquestionably supported by valuable consideration. Both the Agreement of Sale dated December 4, 1962, and the License Agreement itself dated December 27, 1962, state specifically that the parking rights were part of the basic consideration which motivated the entire 1962 transaction. Accordingly, these parking rights were bought and paid for by Transit Company, which constitutes strong and sufficient reason in itself to hold that these rights are transferable.

■ Transit's rights in the parking lots would be nonassignable only if they were of the legal character designated variously as a "bare", "mere" or "naked" license; and for the reasons already stated, the rights here are of a greater caliber. It is therefore not really necessary to go further and choose a precise legal pigeonhole for the purpose of categorizing the parking rights here in question. However, to the extent that it is helpful to select a label, the relation here is best characterized as a lease. The parking lots are specifically described by location and legal description in the granting document, and the underlying Agreement of Sale provided that these parking lots shall be "for the exclusive use of grantee". The right of exclusive possession is the hallmark of a lease. 1A Thompson on Real Property, § 223, pp. 214–217; 3 Thompson on Real Property, § 1032, p. 107; 2 Thompson on Real Property, § 316, p. 24.

Once it is determined that Transit's rights are those of a lessee, and inasmuch as the lease period exceeds two years, those rights are clearly assignable. § 441.-030 V.A.M.S.; Bibler v. Iuchs, Mo.App., 275 S.W. 779; Jones & Oglebay v. Kansas City Board of Trade, 99 Mo.App. 433, 78 S.W. 843; 49 Am.Jur.2d, Landlord and Tenant, § 398, p. 416.

■ If the rights of Transit in these parking lots were not those of a lessee, then at the very least they are rights of easement. The easement here would be one in gross, in contrast to an easement appurtenant; but even so, under the modern rule easements in gross are assignable if commercial in character. Restatement of Property, § 489, p. 3040, et seq.; Powell on Real Property, Vol. 3, § 419. The use of the parking lots here are for commercial purposes, as recognized by the provisions in the agreements to the effect that Transit was to use the lots in connection with the operation of its business. Therefore, no matter how viewed or what legal label is attached, the rights of Transit in these parking lots were assignable.

II

Defendants' remaining argument is that the "license" was not assignable because obligations were imposed upon Transit in the nature of personal trust and confidence. ATA says in its brief that defendants' "Points Relied Upon" are in such general terms that this argument is not properly preserved or presented to this court for review. We agree. Nevertheless, as a matter of grace, we will consider the point briefly.

■ As pointed out under the preceding section of this opinion, the most accurate classification of Transit's rights in these parking lots is that of a lessee. A lease constitutes an interest in land and is generally assignable, notwithstanding any common-law limitation with respect to assignment of a mere contract right. 49 Am. Jur.2d, Landlord and Tenant, § 398, p. 416.

It is true that in a few unusual, atypical situations a lease may consist of such a personal relationship between the landlord and tenant as to make the tenant's rights nonassignable. Powell on Real Property, Vol. 2, § 246(1) (2); Powerine Co. v. Russell's, Inc., 103 Utah 441, 135 P.2d 906, l. c. 913. The type of unusual situation which calls that rule into play is illustrated by the lease of one department in a department store which is operated on a unitary basis, with the tenant paying a percentage rent measured by the volume of sales. Moore v. Thompson, 93 Mo.App. 336, 67 S.W. 680; Powerine Co. v. Russell's, Inc., supra; Naussau Hotel Co. v. Barnett & Barse Corp., 162 App.Div. 381, 147 N.Y.S. 283, affirmed 212 N.Y. 568, 106 N.E. 1036; Gerould Co. v. Arnold Constable & Co., C.A. 1, 65 F.2d 444. Another common illustration is that of the lease of agricultural land on a sharecropping basis. Meyer v. Livesley, 45 Or. 487, 78 P. 670; Lewis v. Sheldon, 103 Mich. 102, 61 N.W. 269; Randall v. Chubb, 46 Mich. 311, 9 N.W. 429.

■ The situation here does not represent such a relationship of personal trust and confidence. In the illustrative situations cited, the personal qualities, abilities and experience of the tenant constituted a central consideration. What we have here, in contrast, are only peripheral and relatively minor obligations to maintain these empty lots free of filth and nuisance and to indemnify the defendants against the rather unlikely event of damage claims against them arising out of the use by bus patrons. Defendants have cited no authority holding these obligations to constitute such a personal relationship of trust and confidence so as to make the leasehold nonassignable, and our own careful research discloses no such authority. The cases which defendant does cite with respect to this point are factually dissimilar.

The judgment is affirmed.

All concur.