**UNITED STATES of America, Plaintiff,**

v.

**126.24 ACRES OF LAND, MORE OR LESS, SITUATE IN ST. CLAIR COUNTY, STATE OF MISSOURI; and Lawrence A. Upp, et al., Defendants.**

**No. 79–0258–CV–W–1.**

United States District Court,
W.D. Missouri, W.D.

Jan. 20, 1983.

Robert G. Ulrich, U.S. Atty., Kenneth E. Weinfurt, Asst. U.S. Atty., Kansas City, Mo., for plaintiff.

Robert W. Spangler, Harrisonville, Mo., Harland D. Burkhead, Kansas City, Mo., John M. Belisle, Belisle & Baker, Osceola, Mo., Tom J. Helms, Collet, Borich & Helms, Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, Senior District Judge.

### I.

This case pends on plaintiff's motion (1) for a partial summary judgment determining that all defendants herein other than Lawrence A. Upp have no compensable interest in the private lake or water wells which have been acquired in this proceeding; and (2) for a judgment finding that the defendants other than Lawrence A. Upp who own properties on the east side of the private lake acquired in this proceeding have no compensable interest whatsoever. There is no dispute concerning the facts necessary to rule this motion.

### II.

The instant condemnation action involves land owned by one Lawrence A. Upp. Also named as defendants in the suit are approximately 112 additional parties defendant. These additional defendants were named as parties because of their possible interest in portions of the property being acquired from defendant Lawrence A. Upp, even though the acquisition herein does not include any portion of their lots.

The acquisition in the present case includes a portion of a subdivision called Upp's Resort originally developed by one

Nellie A. Upp. The original subdivision of the land occurred in 1950, and subsequent additions to the subdivision occurred in 1958 and 1975. The resort includes a privately owned lake extending northward from the Osage River. There are lots on both the east and west sides of this lake; access to the ownerships on the east side of the privately-owned lake will be unaffected by the acquisition but access to properties on the west side of the lake will be severed by the government's acquisition.

The rights of the owners of the subdivision are governed and determined by two documents. The first is entitled "Declaration" which was filed of record with the St. Clair County Register of Deeds on May 10, 1958. The second is a decree of court on record in St. Clair County, Missouri, Case No. 2894 entitled *Frank W. Little, et al. v. Nellie A. Upp,* entered on April 19, 1960. The defendants other than Lawrence A. Upp contend that these documents grant them easements for the use of the privately owned lake and the use of the wells on the resort property. The plaintiff concedes that the Decree grants an easement to use the water wells to those persons (and their successors in interest) who were parties to the St. Clair County suit. The plaintiff, however, contends that the Decree does not grant any other defendant an easement to use the water wells and that it does not grant any defendant an easement to use the lake. Furthermore, concerning the rights of the remaining defendants, the plaintiff contends that the Declaration creates a mere license which is not compensable.

### III.

#### A.

The April 19, 1960 St. Clair County Court Decree incorporated and made part thereof a Compromise Agreement between certain lot owners of Upp's Resort and Nellie A. Upp. The lot owners had filed suit in the Circuit Court of St. Clair County claiming, *inter alia,* an interest in three of the water pumping systems, a permanent easement to take water from wells Nos. 1, 2 and 4, an access to the lake, and a right to use said lake in its present condition. The Compromise Agreement was reached as a result of this suit and the relevant sections provide:

4. It is hereby agreed between all of the parties hereto that the party of the second part is now and shall remain the owner of water wells known as Wells No. 1, No. 2 and No. 4; that all of the lot owners whose lots or houses are presently being served by any of said water wells own an undivided interest with the other lot owners being so served in the pump, pipes, fittings and all other parts of the distribution system through which water is pumped from each of said wells to the various lots; *that said lot owners have a perpetual right or easement to obtain water from each of the said water wells to which their respective lots are presently connected* . . . .

7. The plaintiffs in the suit heretofore referred to are to have *access* to the lake and all of the land bordering the lake not already sold by the party of the second part to others nor platted into lots . . . .

It is specifically understood and agreed that all of the provisions of this compromise agreement affect only the area known as Red Rock Addition to Upp's Resort and lying on the East side of the lake in said resort.

This agreement and the rights created thereby are not only for the benefit of the present plaintiffs, but also for the benefit of their heirs, executors, administrators, successors and assigns. [Emphasis added]

■ We conclude that the Decree grants all persons who owned lots in the Red Rock Addition to Upp's Resort in 1960, as well as their successors in interest, a right to use Wells Nos. 1, 2, and 4 and the pumps, pipes and fittings connecting the wells to the various lots. We further conclude that the Decree grants the plaintiffs to the St. Clair County suit, and their successors in interest, *access* to the lake.

Counsel for defendants contend that this Decree grants all landowners of Upp's Resort the same rights as those conferred on

the parties to the agreement. This claim has no merit. First, the Compromise Agreement by its very terms affects only the area known as the Red Rock Addition to Upp's Resort and lying on the east side of the lake in said resort. Second, this Decree is merely an incorporation of the terms of the Compromise Agreement and is not a State court interpretation of the rights between Nellie A. Upp and Upp Resort lot owners who were not party to the suit.

Defendants also contend that this Decree grants all landowners of Upp's Resort the right to use the lake. The language of the Compromise Agreement is clear: plaintiffs in the suit and their successors were to have *access* to the lake. The plaintiffs' original suit claimed a right of access to the lake and a right to use said lake in its present condition. Therefore, if the parties to the St. Clair suit agreed that plaintiffs had a right to use the lake, it would have appeared in the Compromise Agreement in unambiguous terms.

### B.

The Declaration filed in 1958 contains a number of rules and regulations concerning Upp's Resort. Nellie A. Upp executed the instrument on May 10, 1958 and it contains, *inter alia,* these clauses:

[Page 1]

WHEREAS, ... [Nellie A. Upp] does now and hereby subject all of the lots on the aforesaid plat and all Plats that will be recorded as Additions to Upp Resort to the following covenants, charges and assessments: ...

[Page 3]

These rules are for the protection of all lot owners and their guests. Strict enforcement and full cooperation means safety and pleasure for all. Violaters will be warned and persistent violators will be denied the rights and privileges to use the lake....

[Page 3]

5. It is necessary that the facilities in the Upp Resort Subdivision be properly operated and maintained. For this pur-

pose reasonable charges have been fixed by the Upp Resort Subdivision. The amount of such assessments shall be fixed from year to year ... A failure to pay such charges when due shall be deemed sufficient cause to suspend the uses and privileges of the lake and wells until payment and interest thereon are paid....

[Page 3]

7. The Upp Resort Subdivision reserves the right to amend, modify and add to the rules and regulations with respect to these matters from time to time as circumstances seem to require....

[Page 5]

12. Liability insurance shall be carried on all use, construction, maintenance ... or type of operation on Upp Resort property. A certificate of insurance shall be furnished Mrs. Nellie A. Upp before any permission shall be deemed in effect....

[Page 5]

15. Mrs. Nellie A. Upp holds the right to close any or all parts of Upp Resort properties and lakes to property owners of said Upp Resort, temporarily or permanently for spawning, breeding, grazing, farming or construction purposes....

[Page 5]

21. All Deeds provide that each Lot Owner shall pay the cost of construction and maintenance of water main and sewer systems available to said lots.... No charge will be made for water from wells or lake. Maintenance on mains and water systems will be set and collected by Nellie A. Upp. No private pumps will be allowed without permission in writing from Nellie A. Upp for the purpose of taking water from Upp Resort Lakes or Wells. This permission must be renewed every 90 days. Permission may be revoked at any time by Nellie A. Upp and equipment must be removed within 3 days after date revoked. No pump having over one inch discharge may be operated....

[Pages 5–6]

The lot owner, his heirs and assigns shall, subject to compliance with the foregoing restrictions, and while holding said lot, have license personally and for his family and lot owner's guests, to the use and privileges of the lake in said subdivision known as Upp Resort Subdivision, which shall include boating, bathing, fishing and the use of the private beaches only, also the parkway surrounding said lake including the right to moor boats in front of said parkway, all subject, however, to the rules and regulations prescribed by the Upp Resort Subdivision from time to time.

The plaintiff relies mainly on *Acton v. United States,* 401 F.2d 896, *cert. den.* 395 U.S. 945, 89 S.Ct. 2018, 23 L.Ed.2d 463 (9th Cir.1968) and *Sinclair Pipe Line Co. v. United States,* 287 F.2d 175 (Ct.Cl.1961) to establish that the Declaration granted the landowners of Upp's Resort only a license to use the lake and water wells. We agree that those cases recognize that a license does not constitute property for which the government is liable under condemnation. But those cases do not establish that the Declaration in the present case grants a mere license. *Acton* dealt with uranium prospecting permits and is of little relevance here. *Sinclair Pipe Line Co.* concerned a contract between a landowner and a pipeline company granting the pipeline company "permission and privilege as a mere license, revocable and terminable upon notice as hereinafter provided" to contract and maintain its pipeline across the land in question. Applying Pennsylvania law, the court concluded that the permission given to the plaintiff could be terminated at will by the landowner and that, therefore, plaintiff possessed merely a license.

For reasons discussed below, we conclude that these cases, as well as the other cases cited by plaintiff, do not establish that the Declaration grants merely a license. We also conclude that, under Missouri law, the defendants (other than Lawrence A. Upp and those defendants whose rights are defined by the Decree) have an easement to use the lake subject to the restrictions in the Declaration and also have an easement to use the water wells, except that the right to use any private pump is a mere license, revocable at will by Upp.

In Missouri, the distinguishing feature between an easement and a license is that a license is revocable at will. *First Trust Co. v. Downs,* 230 S.W.2d 770 (Mo. App.1950). It does not matter what the parties call it other than to show the parties' express intent because "the nature of the relationship depends upon how it fits within the standards set by the law." *Friend v. Gem International, Inc.,* 476 S.W.2d 134 (Mo.App.1971). In *Kansas City Area Transportation Authority v. Ashley,* 485 S.W.2d 641 (Mo.App.1972), for example, plaintiff's predecessor sold certain premises to defendants and also entered into a "License Agreement" with defendants whereby defendant granted "a license to Kansas City Transit, Inc. and its successors, for the exclusive use, at a fixed charge of One Dollar ($1.00) per year," of three parking lots that were on the premises which were sold to defendants. The defendants contended that this License Agreement created a mere license that was not transferable. The Court concluded that the agreement did not grant a bare license. They based this conclusion on three factors: (1) there was evidence that the parties intended Transit's rights to be transferable and this would be inconsistent with the granting of a bare license which is nonassignable; (2) the "license" was not revocable at the will of the grantor, but instead was to remain in effect so long as Transit continued to pay $1.00 a year; and (3) the grantee paid valuable consideration for the grant and when that is the case the rights will be deemed to be beyond that of a bare license.

In the present case, plaintiff contends that the provisions of the Declaration clearly demonstrate that the lot owners' rights to use the lake and wells were revocable at will by Nellie Upp. Plaintiff emphasizes that: (1) Upp retained the right to close any portion of the subdivision property including the lake temporarily or permanently; (2) the rights were described as a

"license;" and (3) the lot owners had to pay maintenance fees and purchase insurance to be eligible for continued use of the wells and lakes. But those provisions do not demonstrate that Upp could revoke the rights granted at will.

Nellie A. Upp reserved the right to close all or part of the property and lake only for spawning, breeding, grazing, farming or construction purposes. She did not reserve the right to close off the use of the lake to the property owners for any other reason or purpose. Furthermore, it does not matter that Nellie Upp called it a license; whether or not it is a license must be determined by the applicable Missouri law. Also, the fact that the property owners had to pay fees and insurance is not unlike the conditional payment of one dollar in *Kansas City Area Transportation Authority, supra.*

Moreover, two additional clauses in the Declaration indicate that Nellie Upp granted more than a bare license. First, the Declaration states that the lot owners were to pay the cost of construction and maintenance of water mains and sewer systems available to their lots. Such large expenditure requirements are normally inconsistent with a license that is revocable at will. Second, there is also a provision, quoted above, basically stating that the lot owner, subject only to the restrictions, rules, and regulations, and while holding the lot, shall have "license" to the use and privileges of the lake. Such a provision demonstrates that Nellie Upp did not grant a revocable license, but that the lot owners could use the lake as long as they abided by the rules.

The Declaration, however, does create a license for the use of private pumps. It is clearly indicated that no private pump will be allowed without written permission of Nellie Upp, that permission must be renewed every 90 days, and that permission may be revoked at any time. Nellie Upp, therefore, could revoke at will the right to use private pumps.

▪ Rather than granting a mere license, the Declaration granted the lot owners appurtenant easements to use the lake and wells. Generally, an easement may be created by express or implied grant. *Allee v. Kirk,* 602 S.W.2d 922 (Mo.App. 1980). In the present case, the Declaration was an express grant, formally executed in writing and filed with the Register of Deeds of St. Clair County. Such an appurtenant easement is a compensable and transferable right, and is not merely a personal right. *Three-O-Three Inv., Inc. v. Moffitt,* 622 S.W.2d 736, 739 (Mo.App.1981).

## IV.

Plaintiff also contends that the defendants other than Lawrence A. Upp who own properties on the east side of the private lake have no compensable interest whatsoever because their access has not been destroyed. But, as the foregoing indicates, these lot owners have a compensable interest, their rights being defined by the Decree or Declaration.

## V.

In its response to defendants' suggestions in opposition, the plaintiff requests that the parties to the St. Clair County lawsuit or their successors who are entitled to compensation be required to come forward and identify themselves and furnish some proof that they are entitled to compensation. We will direct further proceedings to enable the parties to establish which defendants are entitled to compensation under the Decree, and which defendants are entitled to compensation under the Declaration.

## VI.

Accordingly, it is

ORDERED (1) that plaintiff's motion for partial summary judgment determining that all defendants other than Lawrence A. Upp have no compensable interest in the private lake or water wells which have been acquired in this proceeding and for a judgment that all defendants other than Lawrence A. Upp who own properties on the east side of the private lake have no compensable interest whatsoever should be and the same is hereby denied. It is further

ORDERED (2) that the Land Condemnation Commission is directed in accordance with the following rulings:

(a) that the defendants who were parties to the St. Clair County, Missouri case *Frank W. Little et al. v. Nellie A. Upp,* Case No. 2894, entered on April 19, 1960, as well as their successors in interest under the Decree, have an easement to use the water wells as described in the Decree, an easement for access to the lake, but have no easement to use the lake.

(b) that the remaining defendants whose lots are subject to the May 10, 1958 Declaration recorded with the Register of Deeds, St. Clair County, Missouri, have an easement to use the water wells .and an easement to use the lake, subject to the restrictions in the Declaration. It is further

ORDERED (3) that within fifteen (15) days the parties should be and are hereby directed to confer and agree on a stipulation setting forth the names of the defendants whose rights are defined by the Decree and the names of defendants whose rights are defined by the Declaration.